WILLIAM A. McQUEEN, Respondent, v. STEPHEN N. WILSON, Administrator, Appellant.

**Kansas City Court of Appeals, November 14, 1892.**

1. **Contracts:** IMPLIED. Where plaintiff took a childless widow—no relative—into his family and boarded her and nursed her in her sickness, the law raised an implied contract that she was to pay plaintiff the reasonable worth of such boarding and nursing.

2. **Evidence:** VERDICT. The evidence in this case is reviewed and found ample to sustain the verdict.

*Appeal from the LaFayette Circuit Court.* — HON. RICHARD FIELD, Judge.

AFFIRMED.

*J. D. Shewalter* and *S. N. Wilson,* for appellant.

(1) There was no evidence in this case of an implied contract, and there was error in refusing to give instruction, numbered 6. In cases like the present the proof must be clear and convincing, and an alleged indebtedness against a deceased person's estate for board for nine years is viewed with · great suspicion, especially when, as in this case, the deceased is a connection of claimant's wife, and is "treated as a member of the family." *Wood v. Land,* 30 Mo. App. 176, and cases cited; 26 Cent. Law Jour., pp. 54, 184; 3 Wait's Actions . & Defenses, 584. (2) There can be no recovery on an implied contract when there is an express contract. The law raises or implies a contract in some cases in the absence of, never when there is, an express contract. There was no evidence in this case of any implied contract, and the court erred in submitting the case on that theory. *Christy v. Rice,* 7 Mo.

430; *Chambers v. King & Tunstall*, 8 Mo. 517; *Crole v. Thomas*, 19 Mo. 70; *Stout v. Tribune Co.*, 52 Mo. 343; *Suits v. Taylor*, 20 Mo. App. 166; *Davidson v. Bierman*, 27 Mo. App. 655; *Greutzner v. Furniture Co.*, 28 Mo. App. 263.

*J. S. Blackwell* and *William Aull*, for respondent.

The evidence is clear and convincing, and has been to two juries, that there was an expectation to pay and to receive pay. There was no relationship, and none can in anywise be tortured from the evidence, between plaintiff and Mrs. Hinson. Even the fact that plaintiff was kind to and treated Mrs. Hinson as a member of his family during the years of her sickness, paralysis and apoplexy whilst her relatives avoided her in her distress as they would the hiss of a rattlesnake is sought by them as a dagger to be thrust at the heart that conceived it. Certainly the kind treatment of one whose limbs were trembling with age, and who was stricken with paralysis and forsaken by her relatives, cannot militate against existing legal obligations. The court properly refused instruction 6 as asked by appellant. It invades the province of the jury as to the facts.

GILL, J.—Plaintiff presented to the probate court of LaFayette county an account for $966, against the estate of Mrs. Hinson, for board, care and nursing the said Mrs. Hinson, during the nine years next preceding her death in 1891. To this claim the administrator filed answer, consisting, *first*, of a general denial, and, *second*, set up in the nature of a counterclaim two notes executed by McQueen and payable to Mrs. Hinson, one for the sum of $200, dated October 25, 1882, due one year after date, and bearing ten-per-cent. interest, and

the other for $300, dated December 25, 1883, running the same time and at the same rate of interest.

On trial in the probate court plaintiff had judgment for $300, and the administrator appealed to the circuit court, where, on a trial anew before a jury, the following verdict was rendered: "We, the jury, find for the plaintiff in the amount of $329.85 for board and attention from settlement December 25, 1888, to the date of death of Mrs. Angeline Hinson; we find plaintiff to pay the $300 with interest amounting to $382.92, leaving a balance due to the estate by plaintiff of $53.07. The $200 note we find and declare settled in the $300 note." From a judgment on this verdict defendant has appealed.

The evidence discloses about this state of facts: Mrs. Hinson, a childless widow, about April, 1881, went to live with plaintiff McQueen, who, though not related, received Mrs. Hinson into his family, gave her a room, with board, washing, etc., and, all agree, treated the old lady with great kindness and affection. A good part of the time of her stay at McQueen's, Mrs. Hinson seems to have been an invalid, and about two or three years before her death was rendered almost helpless by reason of a stroke of paralysis. She died in April, 1891, leaving a small amount of property, and among her assets were found the two notes above mentioned, the execution of which is admitted by the plaintiff, but he claims that the last note—or the one of $300—was made in renewal of the note of $200 and some other small notes, and, hence, that said $200 note was paid, and so the jury found. On the back of the $300 note there appeared an indorsement of payment of all interest due to December 25, 1888, and on the same date a receipt was passed between McQueen and Mrs. Hinson, admitting a settlement of their affairs to that date; and this date

(December 25, 1888) seems to have been fixed upon by the jury as the date from which Mrs Hinson owed McQueen for board.

The major part of appellant's brief and argument is devoted more to objections by reason of alleged failure of proof than to the law as declared by the court's instructions. It will be observed that McQueen sought to recover for boarding Mrs. Hinson because of an alleged implied contract, and so the case was submitted to the jury. The court's instructions were somewhat voluminous, but their general character was covered by plaintiff's instruction, numbered 1, which reads as follows: "1. If the jury believe from the evidence that Mrs. Angeline Hinson, deceased, lived in the family of the plaintiff, and had a room at plaintiff's house, and had boarding furnished her by plaintiff and his family, and if the jury shall further believe from the evidence that during the time Mrs. Angeline Hinson was living at plaintiff's house as aforesaid she became sick and unable to care for herself, and that during such sickness and inability to care for herself the plaintiff and his family cared for and nursed and boarded the said Mrs. Hinson, and if the jury shall further believe from the evidence that there was no express contract or agreement between plaintiff and said Mrs. Hinson, as to how much said Mrs. Hinson should pay plaintiff for said room, board, care and nursing, then the court instructs the jury that the law is, that there was an implied contract that Mrs. Angeline Hinson was to pay plaintiff what said room, board, care and nursing were reasonably worth for the time said Angeline Hinson so boarded at plaintiff's house; and you will so find for plaintiff such reasonable compensation, not to exceed the sum of $996, less such credit as defendant may be entitled to, the amount claimed in plaintiff's petition, or account filed herein. The rule above

applies, unless the jury shall further believe from the evidence that said Angeline Hinson paid plaintiff for said room, board, care and nursing, or that no payment for such room, board, care and nursing of said Angeline Hinson was expected or intended by the parties aforesaid; and in arriving at a verdict in this case the jury may take into consideration all the facts and circumstances detailed in evidence.''

This was a clear exposition of the law as applicable to the case. The defendant sought below, as he seeks here, to have the court say to the jury that there was no evidence upon which they could find an implied contract. After a careful reading of this record and all the evidence offered at the trial, it seems strange that such a claim as that urged by defendant's counsel should be made. That valuable services were performed by plaintiff and his family for this sick and distressed woman, and that from December 25, 1888, they were reasonably worth all the jury found, is too plain to permit of discussion. And, further, that it was at the time the expectation of both Mrs. Hinson and McQueen, that reasonable board should be paid, is very strongly supported by the evidence. It is true that there was some testimony tending to disprove this theory, and to sustain the defendant's claim that Mrs. Hinson was boarded and cared for as a mere gratuity, or that Mrs. Hinson was only to pay the nominal sum of $25 at the close of every year. Still, there is ample testimony shown in this record upon which the jury might well find every fact necessary to support their verdict. Mrs. Hinson frequently, during her stay at McQueen's, said to others outside the family that she was to pay board. Besides, there are other circumstances pointing to that same conclusion—that she expected to pay, and the plaintiff expected to receive pay, for such care, nursing and boarding. They were not related, and it would

seem natural that compensation should have been in the minds of both.

Neither do we concur with defendant's counsel in the statement made that there was no evidence to sustain the jury's finding to the effect that the $200 note, executed by plaintiff, October 25, 1882, was paid and settled by the giving of the $300 note, December 25, 1883. We think the jury's finding in that regard was well warranted by all the facts and circumstances shown by the testimony. The trial court then very properly refused defendant's instruction, numbered 7, which sought to tell the jury that there was "no evidence of the payment of either of said notes," etc.

There is nothing further here deserving notice in an opinion. Judgment affirmed. All concur